# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRL A. COPELAND, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-13-173-FHS-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Darrl A. Copeland requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on November 16, 1964, and was forty-six years old at the time of the most recent administrative hearing (Tr. 60, 432). He has a tenth grade education, never completed the requirements for a GED, and has worked as a retail sales clerk (Tr. 243, 283). The claimant alleges that he has been unable to work since December 10, 1997, and that his inability to work arises from hepatitis C, degenerative disc disease, a fractured left wrist, and depression and anxiety (Tr. 24-25, 95).

### Procedural History

On March 29, 2004, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act (Tr. 22). The Commissioner denied his applications. ALJ Lantz McClain conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated December 5, 2007 (Tr. 22-31). The Appeals Council denied review, but on appeal this Court reversed the decision of the Commissioner in Case No. CIV-09-191-JHP-SPS and remanded the case for further proceedings on January 27, 2011. The remand order included instructions to account for all of the claimant's severe impairments in the functional limitations in the RFC, including his degenerative disc disease and hepatitis C (Tr. 292-300). The claimant subsequently filed a second application for Title XVI

benefits, and was found disabled beginning December 6, 2007 (Tr. 303). ALJ John W. Belcher conducted another administrative hearing and determined that the claimant was not disabled under Title II from December 10, 1997 through March 31, 2006 (the claimant's date last insured), in a written opinion dated October 14, 2011 (Tr. 277-285). The Appeals Council again denied review, so ALJ Belcher's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation, finding that during the relevant insured period the claimant had the residual functional capacity ("RFC") to perform a limited range of sedentary work, *i. e.*, that the claimant could frequently and occasionally lift and/or carry no more than ten pounds; stand and/or walk for at least two hours total during an eight-hour workday; and sit for at least six hours total during an eight-hour workday, but only occasionally climb stairs, balance, bend, stoop, crouch crawl, kneel, or climb ladders, ropes, and scaffolds (Tr. 281). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economy, *i. e.*, table worker, hand suture winder, and final assembler (Tr. 284).

## Review

The claimant contends that the ALJ erred by (i) failing to include all of his limitations in the assessment of his RFC at steps four and five, (ii) by failing to consider *all* the medical and nonmedical evidence provided, and (iii) by improperly analyzing the

claimant's credibility. The undersigned Magistrate Judge finds these contentions persuasive.

The claimant's medical treatment during the relevant insured period focuses on his complaints of pain related to his left wrist and back and his anxiety and depression. On January 21, 2004, Dr. Frank Letcher, M.D., examined the claimant upon referral by his treating physician Dr. David Ring, D.O. Dr. Letcher reviewed an MRI of claimant's lumbar spine and opined that it showed "marked degenerative disease diffusely for a person of his age" and "an extruded disk fragment on the right side at L3-4" (Tr. 141). He also noted that the claimant had an episode of hepatitis C six years prior, and that the experience had left claimant disabled (Tr. 141). Dr. Letcher recommended that claimant undergo a lumbar myelogram and a spinal CT scan after the claimant had pins removed from his left wrist, which had been injured in September 2003 (Tr. 141).

In addition to claimant's back pain, there are many notations in the record referencing claimant's anxiety and depression, as well as the medications (Alprazalam, Lexapro, and Xanax) he was taking to treat it (Tr. 91, 141, 143, 152, 157-60, 165, 168, 171-74). Dr. Ring was of the opinion that the claimant may suffer from post-traumatic stress disorder originating from his involvement and presence in a car accident in which his best friend was killed (Tr. 171-173). Dr. Ring wrote that the claimant's anxiety was so progressed that it was "nearly agoraphobia" (Tr. 173). The claimant has regularly been prescribed anti-depressants for his anxiety and depression, and he testified that he used to see a psychologist even though there are no records indicating as such (Tr. 259).

At the most recent administrative hearing, Dr. Don Clark testified by phone after a review of the claimant's medical record. He testified that the claimant's impairments included hepatitis C, which did not meet a listing severity; chronic low back pain, not of a listing severity; history of depression, non-severe; chronic pain, with possible indications of abuse of narcotic pain relievers (Tr. 411-416). When asked about the claimant's ability to function in a work setting, Dr. Clark testified that he thought regular narcotic use would interfere with the ability to hold a regular job, but that he did not find the claimant to be severely impaired in social functioning, or concentration, persistence, and pace (Tr. 417). Furthermore, he stated that the claimant's chronic back pain should limit him to probably not more than ten pounds as a lifting requirement (Tr. 418). As to postural limitations, he testified that it would probably be unreasonable to ask someone with chronic back pain to bend or stoop frequently, and testified that he believed the indications for such limitations would begin at the earliest in June 2003 (Tr. 418). Upon examination from the claimant's attorney, Dr. Clark testified that medical records indicating a diagnosis of lumbar disk disease with radiculopathy was just a "term" the doctor used but that the medical records including x-rays did not support it because "radiculopathy is a physical and EMG diagnosis" (Tr. 421-427). Since the most recent administrative hearing was so far removed from the date last insured, the ALJ agreed to take "judicial notice" of the claimant's previous hearings, when the claimant also testified that during 2003 and 2004 he struggled with back and knee pain as well as depression and anxiety (Tr. 445-446). He indicated that his symptoms were consistent from December 2007 through March 2006, and that he struggled a great deal with fatigue due

to his hepatitis C at the time (Tr. 446-447). At a previous hearing, the claimant testified that he experienced numbness on the right side of his neck and head; that his knees gave out on him occasionally, which caused him to fall approximately once a week; that sciatic radiation down his right leg caused constant pain in his legs; and that he often experienced panic attacks as a result of his severe anxiety, and rarely went out in public (Tr. 246-149, 253). He stated that he sleeps during the day because of "constant fatigue from [his] liver" and that he was "constantly exhausted . . . from . . . [his] liver being damaged" from his hepatitis C (Tr. 255, 258).

The ALJ found at step two that the claimant's hepatitis C, degenerative disc disease, and osteoarthritis of the wrists were severe impairments, and that he had the additional nonsevere impairments of depression and anxiety (Tr. 279-280). At step four, he summarized the testimony from the most recent administrative hearing, including that of Dr. Clark and the claimant, as well as the medical evidence from the insured period (Tr. 281-282). He then found the claimant not credible, found a 2008 MRI (outside the insured period) to be non-determinative, and gave Dr. Clark's opinion great weight but modified it to include limitations related to the claimant's complaints (Tr. 283). In his written opinion, the ALJ also acknowledged this Court's instructions in Case No. CIV-09-191-JHP-SPS: "Pursuant to the District Court remand order, the Appeals Council has directed me to take further action to complete the administrative record" (Tr. 277). Unfortunately, the ALJ failed to follow these instructions on remand. In particular, he again failed to connect the claimant's severe impairments with the RFC at step 4.

Despite finding that the claimant's hepatitis C, degenerative disk disease, and osteoarthritis of the wrist were severe impairments, he failed to include any limitations related to the hepatitis C or osteoarthritis of the wrist. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. According to Listing 5.00, hepatitis C is an example of a "chronic liver disease" and the Listings provide that even if the ALJ concludes that the claimant's hepatitis C does not meet a listing at step three, its effects will be considered when assessing RFC. 20 C.F.R. Pt. 404, Sbpt. P, Appx. 1, Listing 5.00(D)(4)(a)(ii). The claimant testified that he was very fatigued and had no energy because of the damage to his liver which resulted from his hepatitis C infection. The ALJ summarized the claimant's testimony but made no relevant findings. Additionally, the ALJ at step four discredited the claimant's wrist impairment by finding that the infection in the wrist had resolved (Tr. 282). He should have explained why the claimant's wrist impairment did not call for corresponding physical limitations to his ability to use his hand, and why he discredited the claimant's complaints of fatigue. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as

well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). What the ALJ should have done instead was provide an explanation as to how impairments found to be severe at step two became so insignificant as to require no corresponding limitations in the RFC at step four. *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *see also Hamby*, 260 Fed. Appx. at 112 ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").

Furthermore, the ALJ should have considered the combined effect of *all* the claimant's impairments (including his nonsevere mental impairments) in assessing his RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ

decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). For example, the ALJ should at least have discussed the impact of the claimant's depression and anxiety on his other impairments.

Because the ALJ failed to follow instructions on remand as directed in Case No. CIV-09-191-JHP-SPS, the decision of the Commissioner should be reversed and the case remanded for proper analysis as outlined above.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**